1

2

3

4

5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF WASHINGTON

7   SCHREE R. WADE, a married person,

8                          Plaintiff,          NO:  CV-10-217-RMP

        v.
9                                              ORDER GRANTING
    PREMERA BLUE CROSS, a                      DEFENDANTS' MOTION FOR
10  corporation, and KERRY LUCIANI, an         SUMMARY JUDGMENT
    individual,

11
                         Defendants.
12

13                          **INTRODUCTION**

14          This matter comes before the Court on a motion for summary judgment by

15  the Defendants, ECF No. 40.  Oral argument occurred on August 31, 2011.  The

16  Court has reviewed the relevant filings and pleadings and is fully informed.

17                          **BACKGROUND**

18          The Plaintiff, Schree R. Wade, was an employee of Defendant Premera Blue

19  Cross ("Premera") from 1990 until 2008.  ECF Nos. 43 at 2, 74 at 2.  While the

20  record does not reveal the nature of Ms. Wade's early work at Premera, the record

    ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
    JUDGMENT ~ 1

shows that from approximately 1999 until 2001, Ms. Wade worked as an Analyst

and then a Business Analyst in Premera's Health Care Economics Department

("HCE").  ECF No. 43 at 252.  From 2001 through 2003, Ms. Wade worked as part

of a program dedicated to upgrading Premera's claim processing software.  ECF

No. 43 at 252.

For a brief time in 2002, Ms. Wade came under the supervision of Defendant

Kerry Luciani.  ECF Nos. 74 at 2, 83 at 3.  Ms. Wade asserts that during this time,

Mr. Luciani was forging her name to projects on which he had worked.  ECF No.

74 at 2-3.  Mr. Luciani denies this allegation.  ECF No. 84 at 1-2.  After

complaining about this activity to HCE's director, John Limm, Ms. Wade was

placed under the supervision of Shawn Dever.  ECF No. 74 at 2-3.  While under

the supervision of Mr. Dever, Ms. Ward received a positive performance review

for 2002.  ECF Nos. 74 at 3, 83 at 4-5.

In the last quarter of 2002, Ms. Wade was offered and accepted a position as

the "HCE Auditor."  ECF Nos. 74 at 3-4, 83 at 5.  In an interoffice memorandum

describing the position, Mr. Limm stated that it would have two primary areas of

responsibility:   audit pricing; and contractual and strategic account audits.  ECF

No. 75 at 46.  The position had two non-audit responsibilities:   updating codes in

the claim system; and researching support payment policy.  ECF No. 75 at 46.  The

description made clear that the position did not include the creation or review of

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 2

fee schedules.  ECF No. 75 at 47.  Even though Ms. Wade accepted the "HCE

Auditor" position, her listed position on payroll records remained "Business

Analyst 1."  *E.g.* ECF No. 75 at 51.

 Near the end of 2003, Mr. Dever left Premera and Mr. Luciani again

became Ms. Wade's supervisor.  ECF Nos. 74 at 3, 83 at 5.  Although Mr. Luciani

graded Ms. Wade's 2003 performance as a "2" out of four, Ms. Wade received a

merit pay increase for that year..  ECF No. 76 at 6, 14.    ECF No. 76 at 14.

Ms. Wade contends that Mr. Luciani began giving her assignments that were

outside of her position as HCE Auditor.  ECF No. 75 at 6.  The assignments from

Mr. Luciani included auditing claims for specific groups, auditing standard fee-

schedule building by HCE staff, and engaging in random claim sampling.  ECF

No. 75 at 6.  Mr. Luciani contends that he gave Ms. Wade projects in order to

reduce her unproductive time which he felt was inordinate.  ECF No. 84 at 2-3.

In December of 2004, Ms. Wade took leave under the Family Medical Leave

Act ("FMLA") in order to care for her son following a surgery.  ECF Nos. 74 at 5,

83 at 8.  Mr. Luciani told Ms. Wade that she should come in at night to work to

make up for the time she was missing during the day.  ECF Nos. 74 at 5, 83 at 8.

Ms. Wade asserts that she reported Mr. Luciani's actions to Premera's Human

Resources department.  ECF Nos. 74 at 5, 83 at 8.  However, the Defendants assert

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 3

that, according to Ms. Wade's deposition testimony, Ms. Wade first went to

Human Resources to complain about Mr. Luciani in 2007.  ECF No. 85 at 25-26.

Ms. Wade's performance review for 2004, which was created by Mr. Luciani, was again a "2" out of four.  ECF Nos. 74 at 5, 83 at 9.  Again, Ms. Wade received a merit pay increase.  ECF No. 76 at 25.

From June until October of 2005, Ms. Wade took FMLA leave for musculoskeletal injuries suffered as a result of working at Premera.  ECF No. 75 at 7.  While she was gone, Mr. Luciani required Ms. Wade to contact him on a daily basis to tell him whether she would be coming in to work.  ECF Nos. 74 at 6, 83 at 10.  Ms. Wade asserts that after she returned to work, Mr. Luciani gave her additional work and asked about audits that had not been done due to her absence. ECF Nos. 74 at 6, 83 at 10.  Ms. Wade contends that Mr. Luciani knew that the work he was giving her was too much in light of her injury and that it aggravated her injury.  ECF No. 75 at 8.  The Defendants contend that there is no evidence that Mr. Luciani was aware of the limitations imposed on Ms. Wade by her injury. ECF No. 83 at 10.  In June of 2005, Ms. Wade applied for worker's compensation, but she did not receive benefits until August of 2008.  ECF Nos. 74 at 6, 83 at 10-11.

In November 2005, a Premera contractor performed an ergonomic assessment of Wade's work station.  ECF No. 43 at 4.  Ms. Wade asserts that the

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 4

1    contractor recommended that she acquire specific equipment that would improve

2    her workstation's ergonomics; however, the equipment was not provided until

3    Wade ordered the equipment herself.  ECF Nos. 43 at 4, 74 at 11.  Wade

4    eventually did receive most, but not all, of the equipment that was recommended.[1]

5    ECF Nos. 43 at 4, 74 at 11, 83 at 18-19.

6         In 2005, Mr. Luciani rated Ms. Wade's performance as a "3" out of four.

7    ECF No. 76 at 31.  Ms. Wade received a merit pay increase as well as a bonus.

8    ECF No. 76 at 27, 29.

9         In August 2006, Ms. Wade suffered a seizure.  ECF Nos. 74 at 7, 83 at 11-

10    12.  She took continuous leave for a little less than one month.  ECF No. 43 at 3.

11    Ms. Wade requested that she be allowed to work from home.  ECF No. 43 at 3.

12    Human Resources investigated what would be involved in allowing Ms. Wade to

13    work from home and discovered that it would require special equipment.  ECF No.

14    43 at 3.  Before deciding whether or not to allow Ms. Wade to work from home,

15    Ms. Wade met with her neurologist who cleared her to work at Premera.  ECF No.

16

_____

17         [1]The only specific item referenced in the record that Ms. Wade did not

18    receive was a headset for her telephone.  ECF No. 43 at 135-36.  However, Ms.

19    Wade expressed that she did not need the headset because she rarely used the

20    telephone.  ECF No. 43 at 50.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 5

1   43 at 3-4.  Premera decided to "table" the decision on whether Ms. Wade could

2   work from home.  ECF No. 43 at 3-4.

3         In 2006, Ms. Wade's neurologist prescribed that Ms. Wade should limit her

4   driving.  ECF No. 75 at 53.  Ms. Wade requested permission to work from a

5   different Premera office where her husband could drive her to work.  ECF No. 74

6   at 7.  Ms. Wade's request was denied, and Premera suggested that Ms. Wade

7   should carpool.  ECF Nos. 74 at 7, 83 at 11-12.  Ms. Wade declined to carpool as

8   she felt she could not fairly share the responsibilities of carpooling given her

9   medical needs.  ECF Nos. 74 at 7, 83 at 12.

10        Ms. Wade took intermittent FMLA leave starting in September of 2006 until

11  the end of her time with Premera.  ECF No.  43 at 3.  Ms. Wade asserts that Mr.

12  Luciani regularly asked her about her use of FMLA leave and her medical

13  appointments during their weekly one-on-one meetings.  ECF No. 74 at 8.  The

14  Defendants contend that this assertion is contradicted by Ms. Wade's deposition

15  testimony.  ECF No. 83 at 13.  Ms. Wade asserts that Mr. Luciani "verbally

16  challenged" Ms. Wade about the filing of her claim for worker's compensation.

17  ECF No. 74 at 8.  In Ms. Wade's deposition testimony, Ms. Wade describes Mr.

18  Luciani as asking her why she would file a worker's compensation claim and

19  asking about the types of doctors who she was seeing.  ECF No. 43 at 192-93.  Ms.

20  Wade asserts that after she returned from FMLA leave, Mr. Luciani again gave her

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 6

1    extra work that she was unable to complete due to her disability and that the extra

2    work worsened her disability.  ECF Nos. 74 at 8-9, 83 at 14-15.

3        Mr. Luciani rated Ms. Wade's 2006 performance as a "2+."  ECF No 43 at

4    209.  The record does not reveal whether Ms. Wade received a merit pay increase

5    for her 2006 performance.  On July 19, 2007, Mr. Luciani met with Ms. Wade and

6    delivered an action plan.  ECF No. 43 at 6, 219-20.  The action plan focused on

7    Ms. Wade's tracking her absences from work and tracking the projects assigned to

8    Ms. Wade by Mr. Luciani.  ECF No. 43 at 5, 219-20.  Ms. Wade asserts that Mr.

9    Luciani required her to track her time to the minute.  ECF No. 74 at 12.

10       On October 19, 2007, Wade was nominated for an award for excellence for

11   being a "role model for others" and exemplifying the "values to which Premera

12   aspires."  ECF Nos. 74 at 9, 83 at 15.  The record does not reveal either the process

13   or criteria for nomination.  At a meeting on March 26, 2008, Mr. Luciani

14   reprimanded Ms. Wade for poor work performance.  ECF No. 74 at 9.  Ms. Wade

15   asserts that when she notified Mr. Luciani that she thought his behavior towards

16   her constituted harassment, Mr. Luciani "lunged" towards her in anger.  ECF No.

17   74 at 9.  Ms. Wade's deposition testimony describes the event as her and Mr.

18   Luciani alone in a conference room sitting a couple of feet apart when Mr. Luciani

19   turned red and suddenly moved forward.  ECF No. 43 at 107-08.

20

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 7

On March 26, 2008, Ms. Wade received a written warning about her performance.  ECF No. 43 at 226-231.  Ultimately, Mr. Luciani rated Ms. Wade's 2007 performance as a "2" out of four.  ECF No. 43 at 236.  Ms. Wade did not receive a 2007 merit pay increase.  ECF Nos. 74 at 10, 83 at 16-17.

## APPLICABLE LAW

**Summary Judgment Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A key purpose of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Summary judgment is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Celotex*, 477 U.S. at 327.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.  The moving party must demonstrate to the Court that there is an absence of evidence to support the non-moving party's case.  *See Celotex Corp.*, 477 U.S. at 325.  The burden then

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 8

1    shifts to the non-moving party to "set out 'specific facts showing a genuine issue

2    for trial.'"  *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ.P. 56(e)).

3          A genuine issue of material fact exists if sufficient evidence supports the

4    claimed factual dispute, requiring "a jury or judge to resolve the parties' differing

5    versions of the truth at trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

6    *Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).  At summary judgment, the court draws

7    all reasonable inferences in favor of the nonmoving party.  *Dzung Chu v. Oracle*

8    *Corp.* (*In re Oracle Corp. Secs. Litig.*), 627 F.3d 376, 387 (9th Cir. 2010) (citing

9    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  The evidence

10   presented by both the moving and non-moving parties must be admissible.  Fed. R.

11   Civ. P. 56(e).  The court will not presume missing facts, and non-specific facts in

12   affidavits are not sufficient to support or undermine a claim.  *Lujan v. Nat'l*

13   *Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

14   **Burden Shifting Framework**

15         With regard to claims under Washington's Law Against Discrimination

16   ("WLAD"), "Washington courts have largely adopted the federal protocol

17   announced in [*Green v.*] *McDonnell Douglass* [*Corp.*, 411 U.S. 792 (1973)]" for

18   determining whether a party is entitled to judgment as a matter of law."  *Hill v.*

19   *BCTI Income Fund-I*, 144 Wn.2d 172, 180 (2001) *overruled on other grounds by*

20   *McClarty v. Totem Elec.*, 157 Wn.2d 214 (2006).  Under that framework, "[t]he

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 9

1    plaintiff bears the first intermediate burden, namely, that of setting forth a prima

2    facie case of unlawful discrimination." *Id.* at 181 (citing *McDonell Douglass*, 411

3    U.S. at 802). The plaintiff may satisfy this burden by providing direct evidence of

4    discriminatory intent, or the plaintiff may present circumstantial evidence of the

5    elements constituting a prima facie case of discrimination. *Katsanis v. Educ.*

6    *Emps. Credit Union*, 122 Wn.2d 483, 490-92 (1993). If the plaintiff fails to

7    establish a prima facie case and fails to provide direct evidence of discriminatory

8    intent, the defendant is entitled to judgment as a matter of law. *Id.* (citing

9    *Katsanis*, 122 Wn.2d at 490).

10           However, if the plaintiff establishes a prima facie case, "a 'legally

11    mandatory, rebuttable presumption' of discrimination temporarily takes hold." *Id.*

12    (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 n.7 (1981)).

13    The burden of production then "shifts to the defendant to produce admissible

14    evidence of a legitimate, nondiscriminatory explanation for the adverse

15    employment action sufficient to 'raise[] a genuine issue of fact as to whether [the

16    defendant] discriminated against the plaintiff.'" *Id.* (quoting *Burdine*, 450 U.S. at

17    254-55) (alterations in original). If the defendant fails to produce such evidence,

18    the plaintiff is entitled to judgment as a matter of law. *Id.* at 181-82 (citing

19    *Kastanis*, 122 Wn.2d at 490). If the defendant meets his or her burden of

20    production, then the rebuttable presumption created by the plaintiff's establishment

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 10

of the prima facie case is rebutted and ceases to exist.  *Id.* at 182 (citing *St Mary's Honor Ctr. V. Hicks*, 509 U.S. 502, 510-11 (1993)).

After the presumption is removed, the burden of production reverts to the plaintiff "who must then 'be afforded a fair opportunity to show that [defendant's] stated reason for [the adverse action] was in fact pretext.'"  *Id.* (quoting *McDonnell Douglass*, 411 U.S. at 804) (alterations in original).  "If the plaintiff proves incapable of doing so, the defendant becomes entitled to judgment as a matter of law." *Id.* (citing *Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn.2d 355, 365 (1988)).

Where the plaintiff establishes a prima facie showing and presents sufficient evidence for a rational trier of fact to disbelieve the defendant's nondiscriminatory explanation for the adverse employment action, the case should ordinarily be presented to a fact-finder.  *Id.* at 185-86.  "Once a court determines that the parties have met all three *McDonnell Douglas* intermediate burdens and that the record contains *reasonable but competing* inferences of both discrimination and nondiscrimination, 'it is the jury's task to choose between such inferences.'"  *Id.* at 186 (quoting *Carle v. McChord Credit Union*, 65 Wn. App. 93, 102 (1992)).  The plaintiff always carries the burden of persuasion, and, to succeed on the merits, must show that it is more likely than not that unlawful discriminatory animus was a substantial factor in the adverse employment action.  *Id.* at 180-81, 186-87.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 11

**DISCUSSION**

**Discrimination Claims**

     **Adverse employment action.**

     Many of the plaintiff's claims require a showing of an adverse employment action. The parties disagree over what actions qualify as adverse employment actions. Ms. Wade asserts that she suffered three adverse employment actions: (1) demotion through the changing of her job duties; (2) imposition of additional conditions on her further employment; and (3) denial of a merit pay increase in 2008 for her 2007 performance. The Defendants assert that the only possible adverse employment action was the denial of the merit pay increase.

     "An actionable adverse employment action must involve a change in employment conditions that is more than an 'inconvenience or alteration of job responsibilities.'" *Kirby v. City of Tacoma*, 124 Wn. App. 454, 465 (2004) (quoting *DeGuiseppe v. Vill. Of Bellwood*, 68 F.3d 187, 192 (7th Cir. 1995) (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Indiana*, 993 F.2d 132 (7th Cir. 1993))). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Crady*, 993. F.2d at 136. "Yelling at an employee or threatening to fire an

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 12

1  employee is not an adverse employment action." *Kirby*, 124 Wn. App. at 465

2  (citing *Munday v. Waste Mgmt. of N. Am. Inc.*, 126 F.3d 239, 343 (4th Cir. 1997)).

3      The specific requirements that Ms. Wade asserts constituted a demotion or

4  imposition of additional duties are: (1) the requirement that she track her time; (2)

5  the requirement that she remain on Premera's campus even during lunch breaks;

6  (3) the requirement that she inform Mr. Luciani of her medical conditions,

7  appointments, and treatments; and (4) the requirement that she perform projects

8  outside of her job description.  ECF No. 73 at 4.  The Court concludes that none of

9  these requirements constitute an adverse employment action.  As the *Kirby* court

10  stated, "inconvenience and alteration of job responsibilities" are insufficient to be

11  considered adverse employment actions.  *Kirby*, 124 Wn. App. at 465 (internal

12  quotations omitted).  The addition of work, the requirement that she track her time,

13  restrictions on her ability to leave work, and the requirement that she report her

14  medical appointments constitute changes to her job responsibilities that

15  undoubtedly were an inconvenience.  Such requirements are different in kind from

16  a change in title, a change in pay, or change in benefits that typically constitute an

17  adverse employment action.  Accordingly, the only adverse employment action

18  alleged by the Plaintiff is the lost merit pay increase in 2008 for her 2007

19  performance.

20

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 13

1    **Gender discrimination.**

2    The parties agree that in order to establish a prima facie case for gender

3    discrimination under Washington law, the Plaintiff must show that (1) she is in a

4    protected class; (2) she was treated less favorably in terms of employment; (3) than

5    a similarly situated non-protected employee, and (4) she and the non-protected

6    employee were doing substantially equal work.  *Washington v. Boeing Co.*, 105

7    Wn. App. 1, 13 (2000).  Prima facie evidence also can be established by direct

8    evidence of discriminatory intent.  *Kastanis*, 122 Wn.2d at 491.

9    Although Ms. Wade is in a protected class as a female, there is no evidence

10    in the record of a male employee similarly situated to Ms. Wade who was treated

11    more favorably than Ms. Wade.  Accordingly, Ms. Wade fails to establish a prima

12    facie case of gender discrimination with circumstantial evidence.  Additionally,

13    there is no direct evidence in the record that the decision not to give Ms. Wade a

14    merit raise in 2008 was caused by gender animus.  Accordingly, Ms. Wade has

15    failed to make a prima facie showing of gender discrimination and the Defendants

16    are entitled to judgment as a matter of law on the gender discrimination claim.

17    **Disability discrimination.**

18    The parties agree that in order to establish a prima facie case for disability

19    discrimination under Washington law, the Plaintiff must show that: (1) she was

20    disabled; (2) suffered an adverse employment action; (3) was doing satisfactory

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 14

work; and (4) the adverse action occurred such that it raises a reasonable inference of unlawful discrimination. *Anica v. Wal-Mart Stores, Inc.*, 120 Wn. App. 481, 484 (2004). The Defendants argue that Ms. Wade has failed to establish elements three and four. The Court finds that Ms. Wade has failed to present evidence that raises a reasonable inference of unlawful discrimination in Premera's decision to not give Ms. Wade a merit raise, the only adverse employment action recognized in this case, and, therefore, the Court does not address whether Ms. Wade was doing satisfactory work.

Ms. Wade has presented no evidence other than proximity in time to support her showing that her disability was a substantial factor in the decision not to give her a merit pay increase. Ms. Wade first took leave for her musculoskeletal injuries in October of 2005. ECF No. 74 at 6. Ms. Wade took leave for a seizure in 2006. However, Ms. Wade received merit pay increase in 2006, and there is no evidence in the record that Ms. Wade was denied a raise in 2007. It wasn't until 2008 that the record establishes that the Defendants denied Ms. Wade a raise. Such timing fails to give rise to a reasonable inference that unlawful discrimination based on Ms. Wade's disability was a factor in the Defendants' decision to deny Ms. Wade a merit pay increase in 2008. The Court concludes that Ms. Wade has failed to establish a prima facie showing of disability discrimination, and the Defendants are entitled to judgment as a matter of law.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 15

**Discrimination for Ms. Wade's worker's compensation claim.**

The parties agree that in order to establish a prima facie case for discrimination in retaliation for a worker's compensation claim the Plaintiff must show that: (1) she exercised a right to pursue workers' compensation benefits; (2) she suffered an adverse employment action; and (3) that there is a causal connection between the exercise of the legal right and the adverse employment action. *Wilmot v. Kaiser Aluminum and Chem. Corp.*, 118 Wn.2d 46, 68-69 (1991). In establishing the prima facie element of causation, the plaintiff need not prove that the employer's sole motivation was retaliation. *Anica v. Wal-Mart Stores, Inc.*, 120 Wn. App. 481, 491 (2004). It is enough to produce evidence that the plaintiff's decision to seek workers' compensation was one of the causes of the adverse employment action. *Id.* (citing *Wilmot*, 118 Wn.2d at 70). *Id.* (citing *Wilmot*, 118 Wn.2d at 69). To establish causation in a prima facie case, "'[p]roximity in time between the claim and the firing is a typical beginning point, coupled with evidence of satisfactory work performance and supervisory evaluations.'"

Ms. Wade claimed worker's compensation coverage in June of 2005. ECF No. 74 at 6. She ultimately received benefits in August of 2008. ECF No. 74 at 6. The decision not to give Ms. Wade a merit raise was made in April of 2008. ECF Nos. 43 at 8, 74 at 10. Accordingly, the adverse employment action came almost

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 16

three years after the claim for benefits was made and months before benefits were provided. Accordingly, there is no proximity in time between the alleged adverse employment action and either the request for benefits or the reception of benefits. Accordingly, the Court draws no inference that the events are related.

Ms. Wade points to a comment made by Mr. Luciani in 2007 regarding Ms. Wade's worker's compensation claim as evidence of proximity and causation. According to Ms. Wade's deposition testimony, Mr. Luciani asked her why she would file a worker's compensation claim. ECF No. 43 at 191-94. Ms. Wade does not identify any other conduct by the Defendants in 2007 beyond Mr. Luciani's asking why she was seeking worker's compensation. Such evidence is insufficient to support an inference that there is a causal link between the adverse employment action and Ms. Wade's seeking worker's compensation.

**Retaliation.**

Retaliation claims are subject to the same burden shifting scheme as the other discrimination claims under the WLAD. *Milligan v. Thompson*, 110 Wn. App. 628, 638-39 (2002). To establish a prima facie case for retaliation, the Plaintiff "must show that (1) she engaged in statutorily protected activity, (2) [the Defendants] took some adverse employment action against her, and (3) retaliation was a substantial factor behind the adverse employment action." *Boeing*, 105 Wn. App. at 14.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 17

1    Ms. Wade asserts that she engaged in two statutorily protected activities: (1)

2    reporting Mr. Luciani for harassment; and (2) taking FMLA leave.[2]

3    ***Reporting harassment***

4    Ms. Wade met with Mr. Luciani on March 26, 2008.  ECF No. 75 at 12.  At

5    that meeting, Mr. Luciani gave Ms. Wade a written warning about her

6    performance.  ECF No. 34 at 226-31.  Ms. Wade told Mr. Luciani that she believed

7    his conduct constituted harassment and she reported a claim of harassment to

8    Premera's human resources department.  ECF No. 74 at 9.  On April 9, 2008, Ms.

9    Wade was informed that she would not be receiving a merit pay increase based on

10   her 2007 performance.  ECF No. 43 at 256.  Wade did not receive a written

11   evaluation of her 2007 performance until May 12, 2008.

12   The Defendants seek summary judgment arguing that Ms. Wade has failed

13   to provide evidence that Ms. Wade's report of harassment was a substantial factor

14   in Premera's decision not to award her a merit pay increase.  However, the

15   "substantial factor" element may be satisfied if the protected activity and adverse

16   action were proximate in time and there is evidence that the employee was

17   performing satisfactory work.  *Campbell v. State*, 129 Wn. App. 10, 23, 118 P.3d

18   888, 893-94 (2005).  The report of harassment occurred in March 2008.  The

19        [2]Ms. Wade also asserts that she was retaliated against for seeking worker's

20   compensation benefits; however, that claim already has been addressed above.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 18

decision not to give Ms. Wade a raise came the very next month.  Accordingly, the events were proximate.  However, Ms. Wade fails to present evidence that she was performing satisfactory work.

The evidence in the record shows that while Ms. Wade was rated as a "3" out of four for 2005, her performance rating slipped to a "2+" for 2006.  In 2007, Ms. Wade was placed under an action plan, her performance was rated a "2," and she was given a written warning about her performance.  In support of Ms. Wade's argument that her performance level presents an issue of fact for the jury, Ms. Wade presents a letter from 2007 showing that Ms. Wade had been nominated for a "Spirit of Excellence Award" which "demonstrates that you are a role model for others and that you exemplify the values to which Premera aspires."  ECF No. 75 at 57.  Nothing from the face of this nomination suggests that it was provided to Ms. Wade based her performing satisfactory work.  Additionally, the record does not reveal what criteria or process are used to determine who gets nominated.  Accordingly, no reasonable jury could find from this evidence alone that Ms. Wade was performing satisfactory work.

As a result, the proximity between Ms. Wade's complaint of harassment and Premera's decision not to give Ms. Wade a merit performance increase does not give rise to an inference that Ms. Wade's complaint was a substantial factor in Premera's decision not to give her a merit pay increase.  Ms. Wade has failed to

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 19

present any other evidence showing a nexus between her complaint of harassment

and Premera's decision not to award her a merit pay increase. Accordingly, Ms.

Wade has failed to meet her prima facie burden.

### *FMLA leave*

Ms. Wade took FMLA leave in June of 2004; from June 24, 2005 to October

3, 2005; for one month in 2006, and intermittently from September 12, 2006, until

the end of her employment. ECF No. 43 at 2-3. Ms. Wade received merit pay

increases for every year[3] except 2008 for her 2007 performance. Accordingly,

there is no inherent proximity between Ms. Wade's taking of FMLA and Premera's

decision not to give her a pay increase. Ms. Wade has failed to present any other

evidence that her FMLA leave was a substantial factor in Premera's decision to not

give her a merit pay increase.

### **Reasonable accommodation of disability.**

An employer has a duty to reasonably accommodate a worker with a

disability unless such accommodation would be an undue hardship. *Hines v. Todd

Pac. Shipyards Corp.*, 127 Wn. App. 356, 373 (2005) (citing *Pulcino v. Fed.

Express Corp.*, 141 Wn.2d 629, 639 (2005)).    In order to establish a prima facie

---

[3]The record does not reveal whether Ms. Wade received a raise or not in

2007 for her 2006 performance.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 20

case for discrimination based on failure to accommodate a disability the Plaintiff

must establish:

> (1) that she had a sensory, mental, or physical abnormality that substantially limited her ability perform the job; (2) the employee was qualified to perform the essential functions of the job in question; (3) the employee gave the employer notice of the abnormality and its accompanying substantial limitations; and (4) upon notice, the employer failed to affirmatively adopt measures that were available to the employer and medically necessary to accommodate the abnormality.

*Townswend v. Walla Walla School Dist.*, 147 Wn. App. 620, 626-27 (2008).

The employee must give the employer notice of her abnormality, and such

notice must inform the employer that the abnormality substantially limits the

employee's ability to perform her job.   *See Roeber v. Dowty Aerospace Yakima*,

116 Wn. App. 127, 140 (2003); *Hume v. American Disposal Company*, 124 Wn.2d

656, 672 (1994).   The employee need not give notice of the full nature and extent

of the disability.   *Goodman v. Boeing Co.*, 127 Wn.2d 401, 408 (1995).   Once

notice is given, the employer must take positive steps to accommodate the

employee's limitations including determining the extent of the disability.   *Id.*   The

employee "retains a duty to cooperate with the employer's efforts by explaining

her disability and qualifications."   *Id.*

The employer need not provide the specific accommodation requested by the

employee.   *Griffith v. Boise Cascade, Inc.*, 111 Wn. App. 436, 443 (2002) (quoting

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 21

*Sharpe v. Am. Tel. & Tel. Co.*, 66 F.3d 1045, 1050 (9th Cir. 1995)).  Instead, "[i]n determining what is a reasonable accommodation, the evaluation must begin with the job specifications and how those tasks are impacted by the abnormal condition."  *Doe v. Boeing Co.*, 121 Wn.2d 8, 20 (1993) (citing *Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869, 879 (9th Cir. 1989)).

The parties agree that Ms. Wade suffers from one or more disabilities.  The record evidences two conditions suffered by Ms. Wade: (1) a seizure in 2006; and (2) musculoskeletal injuries starting in 2005.  ECF No. 75 at 7, 9.

### *Ms. Wade's seizure*

Ms. Wade suffered a seizure at work in 2006.  ECF No. 75 at 9.  Originally, Ms. Wade requested that she be allowed to work from home.  ECF No. 75 at 9.  However, after her appointment with a neurologist was moved to an earlier time and she was cleared to return to work, Ms. Wade converted her request to a request that she be allowed to work at the Sprague office.  ECF No. 34 at 142.  Ms. Wade's request was based on her Doctor's prescribed restriction that she limit her driving.  ECF No. 75 at 53.  Ms. Wade claims that working at the Sprague office would allow Ms. Wade's husband to be available to drive her to work.  Premera denied Ms. Wade's request to work from the Sprague office in either September or October of 2006.  ECF No. 75 at 10, 55.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 22

The statute of limitations on a reasonable accommodation claim is three years.  RCW 4.16.080(2).   A cause of action for failure to accommodate a disability "accrues when the employer makes the decision not to accommodate the employee's [disability] and that decision is communicated to the employee." *Hinman v. Yakima School Dist. No. 7*, 69 Wn. App. 445, 449-50 (1993).

Premera communicated to Ms. Wade in late 2006 that it was not going to allow her to work at the Sprague location.  Ms. Wade filed the instant action on June 7, 2010.  Accordingly, Ms. Wade's failure to accommodate claim for the driving limitation imposed by her seizure was brought more than three years after it accrued.  Therefore, the claim is time-barred.

### Ms. Wade's musculoskeletal injuries

Ms. Wade alleges that she suffers from work-induced musculoskeletal injuries affecting her neck, shoulders, and left arm.  ECF No. 75 at 7.  Ms. Wade asserts that she made three requests for accommodation regarding her musculoskeletal injuries: (1) a request for more ergonomic working equipment; (2) a request to work part-time; and (3) a request that Mr. Luciani reduce or eliminate the project work that he was assigning.

Washington recognizes two types of disabilities: (1) "either the impairment must be the source of a substantial limitation or [(2)] there must be medical documentation indicating a reasonable likelihood that engaging in the job duties

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 23

1    without accommodation would aggravate the impairment to the extent that it would

2    create a substantially limiting effect." *Johnson v. Chevron U.S.A., Inc.*, 159 Wn.

3    App. 18, 30-31 (2010) (internal quotations omitted).

4        Nowhere in the record is it apparent what limitations Ms. Ward's injuries

5    placed upon her ability to work.  While there is evidence that Ms. Ward's injuries

6    eventually rendered her unable to work at all, such inability appears to have arisen

7    at some time in 2008.  ECF No. 34 at 173-74.  The parties have agreed that Ms.

8    Ward suffers from a disability.  However, the parties have provided no evidence

9    with which the Court can determine the nature of the limitation suffered by Ms.

10   Ward.  Without knowing the limitations imposed by Ms. Wade's disability, the

11   Court cannot determine whether the accommodations sought by Ms. Ward are

12   reasonable or whether any accommodations are available to the employer.  In

13   short, it is impossible for this Court to find that "the employer failed to

14   affirmatively adopt measures that were available to the employer and medically

15   necessary to accommodate the abnormality." *Townswend v. Walla Walla School*

16   *Dist.*, 147 Wn. App. 620, 626-27 (2008).

17       Ms. Wade has provided evidence, in the form of a declaration, suggesting

18   that Mr. Luciani's assigning her project work aggravated her injuries.  ECF No. 75

19   at 11.  However, to establish liability based on a theory that a failure to

20   accommodate an injury will worsen the injury to the point where it becomes a

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 24

1    substantial limitation, a plaintiff must provide "medical documentation" to that

2    effect.  *Johnson v. Chevron U.S.A., Inc.*, 159 Wn. App. 18, 30-31 (2010).  Ms.

3    Wade has provided no medical documentation in support of her musculoskeletal

4    injury accommodation claim.  Accordingly, Ms. Wade has failed to meet her

5    burden to establish a prima facie case that Premera failed to accommodate her

6    musculoskeletal injuries.

7    **Harassment / Hostile work place.**

8         In order to establish a case for discrimination based on a hostile work

9    environment the Plaintiff must show that (1) the complained of conduct was

10   unwelcome; (2) the complained of conduct was motivated by a protected

11   characteristic; (3) the complained of conduct was sufficiently pervasive so as to

12   alter the terms or conditions of employment and create an abusive working

13   environment; and (4) the harassment can be imputed to the employer.  *Glasgow v.*

14   *Georgia-Pacific Corp.*, 103 Wn.2d 401, 406-407 (1985).

15        In determining whether conduct was sufficiently pervasive so as to alter the

16   terms or conditions of employment and create an abusive working environment, a

17   court looks to the "totality of the circumstances."  *Adams v. Able Bldg. Supply,*

18   *Inc.*, 114 Wn. App. 291, 296-97 (2002).  A court looks "at whether the conduct

19   involved words alone or also included physical intimidation or humiliation."  *Id.* at

20   297.  The conduct must be both objectively abusive under a reasonable person test

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 25

1    and subjectively perceived to be abusive by the victim.  *Id.* (citing *Faragher v. City*

2    *of Boca Raton*, 524 U.S. 775, 788 (1998)).

3         The amended complaint identifies Mr. Luciani as the harassing party, but

4    does not specifically identify what conduct constituted harassment.  In her

5    memorandum opposing this motion, Ms. Wade identifies the following conduct as

6    constituting harassment: (1) low performance reviews; (2) assigning non-audit

7    project work; (3) repeatedly inquiring as to Wade's medical conditions and her

8    treatments; (4) "lunging" towards Wade; and (5) "discipline."  ECF No. 73 at 13-

9    14.

10        Except for Mr. Luciani's "lunge," none of the conduct identified by Ms.

11   Wade would qualify as objectively abusive.  Accordingly, no reasonable jury could

12   find that such conduct produced such a pervasively abusive environment as to

13   constitute a change in work conditions.  While physical threats can create the type

14   of environment required to sustain an action for harassment based on a hostile

15   work environment, isolated incidents are insufficient to establish the pervasively

16   abusive environment required.  *Francom v. Costco Wholesale Corp.*, 98 Wn. App.

17   845, 857-58 (2000) (quoting *Glasgow*, 103 Wn.2d at 406-07.).  Mr. Luciani's

18   "lunge" is insufficient to support Ms. Wade's claim for harassment because it was

19   an isolated incident.  Accordingly, the Defendants are entitled to summary

20   judgment on the harassment / hostile work place claim.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 26

**Negligence Claims**

The Plaintiff's complaint alleges only "negligence."  In her memorandum in opposition to the instant motion, the Plaintiff clarifies that her claims are for negligent supervision and negligent infliction of emotion distress.

**Negligent supervision.**

Ms. Wade's negligent supervision claim is dependent on her hostile workplace claim.  The Plaintiff asserts that Premera management failed to address the hostile workplace created by Defendant Kerry Luciani.  There is a special rule for negligent supervision in the hostile work environment context.  *See Henningsen v. Worldcom, Inc.*, 102 Wn. App. 828, 837-38 (2000).  In order for an employer to be liable for a hostile work environment created by a supervisor, the employee must show (1) that the employer authorized, knew, or should have known of the harassment; and (2) that the empoyer failed to take reasonably prompt and adequate corrective action.  *Id.* at 837.  Because Ms. Wade's hostile work place claim fails, her negligent supervision claim also fails as a matter of law.

**Negligent infliction of emotional distress.**

Washington recognizes the tort of negligent infliction of emotional distress.  *Hunsley v. Giard*, 87 Wn.2d 424, 435 (1976).  In addressing negligent infliction of emotional distress claims, Washington courts focus on the typical tort structure of

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 27

1    (1) a duty, (2) a breach of that duty, (3) proximate cause, and (4) a compensable

2    injury. *Snyder v. Medical Serv. Corp. of E. Wash.*, 145 Wn.2d 233, 243 (2001).

3        "The existence of a duty is a question of law and depends on mixed

4    considerations of 'logic, commons sense, justice, policy, and precedent.'" *Id.* at

5    243 (quoting *Lords v. N. Auto. Corp.*, 75 Wn. App. 789, 596 (1994)) (internal

6    quotations omitted). "The defendant's obligation to refrain from particular conduct

7    is owed only to those who are *foreseeably* endangered by the conduct and only

8    with respect to those risks or hazards whose likelihood made the conduct

9    unreasonably dangerous." *Id.* at 245. (emphasis in original) (internal quotations

10   omitted). "Conduct is unreasonably dangerous when its risks outweigh its utility."

11   *Id.* "[A]bsent a statutory or public policy mandate, employers do not owe

12   employees a duty to use reasonable care to avoid the inadvertent infliction of

13   emotional distress when responding to workplace disputes." *Bishop v. State*, 77

14   Wn. App. 228, 234-35 (1995). "The courts cannot guarantee a stress-free

15   workplace." *Id.* at 235.

16       Nothing in the record establishes that Mr. Luciani or Premera engaged in

17   "unreasonably dangerous" activity or that any of the actions taken in this case fall

18   outside of "responding to workplace disputes." While the court does not doubt that

19   there was friction between Ms. Wade and Mr. Luciani, workplace strife is

20   generally not actionable as a claim for negligent infliction of emotional distress.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 28

1   Accordingly, Ms. Wade has failed to present evidence in support of her claim for

2   negligent infliction of emotional distress.[4]

3   **Intentional Infliction of Emotional Distress (Outrage)**

4        The parties agree that in order to prevail on a claim for outrage a plaintiff

5   must show: (1) that the defendants engaged in extreme and outrageous conduct; (2)

6   that the defendants intentionally or recklessly inflicted emotional distress; and (3)

7   that the plaintiff actually suffered severe emotional distress.  *Strong v. Terrell*, 147

8        [4]Ms. Wade points to the WLAD and the FMLA for the proposition that a

9   breach of the WLAD or the FMLA may give rise to a cause of action for negligent

10  infliction of emotional distress.  While the *Bishop* court did state that "absent a

11  statutory or public policy mandate" employers had no duty to avoid the inadvertent

12  infliction of emotional injuries on employees during workplace disputes, the

13  *Bishop* court did not state that the an action seeking emotional damages for

14  statutory violations would constitute a negligent infliction of emotional distress

15  action.  *See Bishop*, 77 Wn. App. at 234-35.  Instead, the court was merely

16  reflecting that emotional damages may still be available for violations of civil

17  rights statutes.  *See e.g. Wheeler v. Catholic Archdiocese*, 65 Wn. App. 552 (1992).

18  Here, the Court already has rejected Ms. Wade's WLAD claims.  Additionally, Ms.

19  Wade has failed to allege any claims under the FMLA.  Accordingly, Ms. Wade

20  has not established a basis for recovering emotional damages.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 29

Wn. App. 376, 385 (2008).  "Any claim of outrage must be predicated on behavior

"'so outrageous in character, and so extreme in degree, as to go beyond all possible

bounds of decency, and to be regarded as atrocious, and utterly intolerable in a

civilized community.'''"  *Id.* (quoting *Kloepfel v. Bokor*, 149 Wn.2d 192, 195-96

(2003) (quoting *Grimsby v. Samson*, 85 Wn.2d 52, 59-60 (1975))).

Here, no reasonable jury could find that the conduct described in the record

constitutes conduct sufficiently outrages that it could support an action for

intentional infliction of emotional distress.  Accordingly, MS. Wade's claim fails

for lack of evidence.

### CONCLUSION

Accordingly, **IT IS HEREBY ORDERED:**

1.  The Defendants' motion for summary judgment, **ECF No. 40**, is
    **GRANTED**.

2.  The Plaintiff's claims in the above-captioned action are **DISMISSED
    WITH PREJUDICE** and without costs to either party.

3.  **JUDGMENT** shall be entered for the Defendants.

**IT IS SO ORDERED**.

The District Court Executive is hereby directed to enter this Order, enter

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 30

judgment for Defendants, provide copies to counsel, and **CLOSE** this file.

    **DATED** this 3rd of January 2012.


                    _s/ Rosanna Malouf Peterson_
                    ROSANNA MALOUF PETERSON
                    Chief United States District Court Judge

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 31